[No. 9564.  Department One. — October 29, 1885.]

J. C. HOULT ET. AL., RESPONDENTS, v. E. J. BALD-WIN, APPELLANT.

SALE — MANUFACTURED ARTICLE — IMPLIED WARRANTY. — Under sections 1769 and 1770 of the Civil Code, one who sells or agrees to sell an article of his own manufacture, thereby warrants it to be free from any latent defect not disclosed to the buyer, arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein; and one who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for such purpose.

ID. — EXPRESS WARRANTY OF FITNESS — BREACH BY SELLER — RESCISSION BY BUYER. — Upon a breach by the seller of either of such implied warranties, or upon a breach by him of an express warranty that the article manufactured and sold would do good work of a particular kind, the buyer has a right to rescind the sale by returning or offering to return the article to the seller.

ID. — GUARANTY — WHEN PART OF CONTRACT. — The machine in question was manufactured and sold by the plaintiffs on the order of an agent of the defendant. At the time of the order, the plaintiffs notified the defendant that they intended to deliver the machine upon the cars, and that their responsibility, so far as the working thereof was concerned, should then cease. The defendant refused to accept it upon these terms, and demanded a guaranty that it would do good work. The plaintiffs thereupon executed and forwarded to him a written guaranty to that effect. Held, that the guaranty was a part of the contract of sale, and supported by a sufficient consideration.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion.

*Lloyd & Wood,* and *J. A. Loutitt,* for Appellant.

*J. C. Campbell,* and *W. L. Dudley,* for Respondents.

BELCHER, C. C. — This is an action to recover the purchase price of a harvesting machine known as a combined header and separator.

The machine was manufactured by the plaintiffs at the city of Stockton, and is alleged to have been sold and delivered by them to the defendant in the month of May, 1878.

About the middle of April of that year the defendant was at Stockton, and in company with one H. C. Shaw, who resided there, went to the plaintiffs' shops and saw some of the machines, which were in process of construction.

After leaving the shops, defendant said to Shaw: "If I write up to you to secure one of these machines, will you attend to the business for me?" and Shaw said he would.

None of the machines were then finished, or expected to be finished, for nearly a month.

The defendant then went away, and a correspondence was carried on between him and Shaw, and to some extent between him and the plaintiffs, in reference to the purchase of a machine and the terms and conditions on which one would be furnished.

On the 23d of April, Shaw left an order for one of the machines, and on the 15th of May one was finished and placed on a car to be shipped to the defendant's ranch in Los Angeles County.

When the machine arrived at the railway station nearest to the ranch, it was carefully taken from the car, and the detached parts were put together. Animals were then harnessed to it, to haul it away, but before it had gone more than forty or fifty feet from the depot, upon a dry, hard, and level road, the tiller-post, by which the guiding wheel was attached to the tongue, broke, and it could be moved no further. A telegram was immediately sent to the plaintiffs, notifying them of the break, and they at once sent forward a duplicate casting to take the place of the broken one. The new casting was put in place and another effort was made to haul the machine to the ranch, but before it had gone many feet the new casting also broke.

The defendant then declined to accept the machine, and offered to return it to the plaintiffs, and to pay the return freight thereon.

This was the first machine which went out from the plaintiffs' shops during that year, and very soon after it was shipped an improvement was introduced and used upon all the other machines by which the tiller-post was strengthened. "It was made heavier; more metal was used in the plate or bottom part, and a stirrup or iron strap was put around it." The plaintiffs did not offer to furnish to the defendant the improved tiller-post, or notice in any way the fact that the machine had become disabled a second time. They waited four months without demanding pay for the machine, or making any suggestion about its use or return, and then commenced this action.

In defense of the action the defendant set up a warranty of the machine, a breach of the warranty, and a prompt offer to return the machine to the plaintiffs after he discovered its insufficiency.

The case was tried before a jury, and the verdict was in favor of the plaintiffs "for the full amount claimed, with interest."

The defendant—appellant here—now insists that the verdict was not justified by the evidence, and that the court erred in giving certain instructions, and refusing to give other instructions to the jury.

We think the motion for a new trial should have been granted.

It appears from the testimony in the case that on the very day the machine was ordered, the defendant was notified of the fact of its being ordered, and that the plaintiffs proposed to deliver it upon the cars, and that their responsibility, so far as the working of the machine was concerned, should then be at an end; that the defendant was unwilling to accept it on those terms and demanded a guaranty that it would do good work; that the plaintiffs at once acceded to the demand, by executing and forwarding to the defendant a written guaranty that the machine would do good work in cutting and thrashing ordinary grain, standing from one to five feet in height.

When the defendant demanded the guaranty he added that he would be willing to pay the expenses of a man to start the machine on his ranch and test the same. The plaintiffs in reply said: "We will send a man with the machine, you paying his

expenses to your ranch and back. He will start the machine and show to your satisfaction that it is all that we have represented it to be."

The machine was sent forward, but the plaintiffs did not send a man with it, nor did they send one after they were notified that it had broken.

It is claimed for the respondents, that their guaranty was made after the sale was complete, and that it was therefore without consideration and void, and that at any rate one of the conditions of the guaranty was that the man sent by the plaintiffs should *start the machine*, and as defendant endeavored to start it without notifying them, they are entitled to recover in this action the price of it.

This position cannot be maintained. It is clear from the testimony that the guaranty was not made after the sale was complete, and it was not without consideration and void. It is also evident that when the plaintiffs promised to send a man to start the machine, they meant to start it in the grain-field, and not from the railroad depot to the ranch.

But if the respondents were right in their contention as to the written guaranty, still the Civil Code provides:—

"Section 1769. One who sells or agrees to sell an article of his own manufacture, thereby warrants it to be free from any latent defect, not disclosed to the buyer, arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein.

"Section 1770. One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose."

The warranties provided in these sections are as broad at least as the written guaranty, and must be held to have attended and been conditions of the sale.

Having taken the machine then under a warranty, whether it be that expressed in the writing or provided by the Code, or both, the defendant had the right, if there was a breach of the warranty, that is, if in any respect the machine was not what it was warranted to be, to rescind the sale by returning or offering to return it to the plaintiffs. (*Polhemus* v. *Heiman*, 45 Cal. 573.)

The principal questions for the jury were: Would the machine, as sent forward, do good work in cutting and threshing ordinary grain from one to five feet in height? Was it reasonably fit for the purpose for which it was ordered? Was there any latent defect arising from the process of manufacture not disclosed to the buyer?

The theory of the plaintiffs at the trial was that their responsibility in respect to the machine ceased when it was placed on the cars at Stockton, and that they then became entitled to demand and receive the agreed price for it.

This theory finds expression in instruction No. 1, given at the request of the plaintiffs, and in the modification of instruction No. 4, given at the request of the defendant. The theory, as we have seen, was wrong, and the court erred in giving the plaintiffs' instruction and in refusing to give, without modification, that of defendant.

The court also erred, we think, in striking off a part of instruction No. 1, and in refusing to give instructions No. 9 and 10, asked by defendant.

As the case must be tried again and be somewhat differently presented, we do not deem it necessary to speak particularly of the other instructions given and refused.

The judgment and order should be reversed and the cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion the judgment and order are reversed and cause remanded for a new trial.