[No. 13274.   Department Two. — March 1, 1890.]

JOHN FOX AND J. C. TILTON, RESPONDENTS, *v.* THE STOCKTON COMBINED HARVESTER AND AGRICULTURAL WORKS, APPELLANT.

EVIDENCE OFFERED SECOND TIME. — When documentary evidence has been already offered and admitted as a part of the cross-examination of witnesses, it is in evidence for all purposes for which it is admissible; and it is not error to refuse to admit such evidence, when offered a second time, though the ground assigned for the exclusion may be untenable.

INSTRUCTIONS. — An instruction which would tend to confuse and mislead the jury by diverting their attention from a portion of the evidence in the case should be refused; and an instruction may be properly refused for the reason that it has been already given. Instructions are properly given when applicable to the evidence, and not erroneous.

SALE OF MANUFACTURED ARTICLES — BREACH OF WARRANTY — REPRESENTATIONS — QUESTION OF FACT — PLEADING. — In an action for damages for breach of a contract of sale of harvesting machines manufactured by the defendant, which were warranted to do good work, and concerning the working of which certain representations and guaranties are alleged to have been made, whereby the purchase was induced, it is proper to submit to the jury whether or not the representations testified to were intended as warranties, the averments of the complaint being sufficient to include such warranties.

ID. — EVIDENCE AS TO OTHER MACHINES. — In such action, evidence for the defendant to the effect that other machines made of the same pattern and of like materials did good work is not admissible.

ID. — BREACH OF EITHER OF SEVERAL WARRANTIES — INSTRUCTIONS. — Where the evidence shows a breach of several warranties made upon the sale of a manufactured article, and the averments of the complaint are sufficient to cover all such warranties, instructions to find for plaintiffs predicated upon the breach of either of the warranties are proper.

ID. — WARRANTY BY SALE OF ARTICLE TO BE MANUFACTURED. — Every person or corporation who manufactures an article under an order for a particular purpose warrants by the sale of it that it is reasonably fit for that purpose.

ID. — MEASURE OF DAMAGES FOR BREACH OF WARRANTY — LOSS INCURRED
    IN TRIAL. — For breach of warranty of a machine sold by the manufac-
    turer, and returned after trial as being unfit for use, the measure of
    damages is the price paid by the purchaser, with interest, and in addi-
    tion thereto, such amount of expense or loss as he has actually sustained
    in *bona fide* attempts to make the machine do the work for which it was
    constructed, including compensation for the loss of time, horse-hire, use
    of animals, and wages and board ot hired men.
ID. — RETURN OF UNFIT MACHINE — WAIVER OF DELAY — PLEADING. —
    If the return of a machine, warranted to do good work, and found upon
    trial to be unfit for use, is delayed at the request of the manufacturer, he
    thereby waives the right to require prompt delivery by the purchaser on
    discovery of the fact that it does not do the work guaranteed.
ID. — JOINT PURCHASE OF MACHINES — SEPARATE CONTRACTS — PAROL EVI-
    DENCE OF AGENCY — JOINT ACTION FOR BREACH. — When two machines
    are purchased on joint account, and paid for out of joint funds of the
    purchasers, the fact that a separate contract is entered into and signed
    by each of them separately in his own name for one machine each does
    not preclude parol proof that the purchase was made by each as agent
    for both purchasers on their joint account, and such evidence will sus-
    tain a joint action for breach of warranty upon sale of the machines.

APPEAL from a judgment of the Superior Court of
Stanislaus County, and from an order denying a new
trial.

The action was brought by John Fox and J. C. Tilton,
who alleged that they were jointly interested as farmers
in the cultivation of large tracts of land in the county
of Stanislaus for the raising of grain, to recover dam-
ages for the alleged breach of a contract made by them
in June, 1884, with the corporation defendant, acting
through L. U. Shippee as its duly authorized agent, to
manufacture and sell to them two twelve-foot Shippee
combined harvesters, with Shippee and Grattan improve-
ments, at the agreed price of three thousand six hundred
dollars, and that the defendant represented, warranted,
and guaranteed that each of said harvesters would do
good and satisfactory work in the harvesting, cutting,
and saving of grain; that they would harvest the grain
at a greatly reduced expense; that they would do good
and satisfactory work in the harvest-field, cutting from
twenty to forty acres of grain per day, and saving all the

grain cut; and that said machines were reasonably fit for the purpose of harvesting and thrashing grain, and would do good and satisfactory work in the grain-field, and were entirely free from any latent defects whatever; and that the purchase of the said harvesters was thereby induced, plaintiffs acting and relying thereupon in the said purchase of and in accepting and paying for said machines. The complaint further alleged that said machines were ordered on the joint account of plaintiffs, and for their joint use and benefit, and were paid for out of their joint funds, and that the damage suffered by them was damage to the joint property of plaintiffs; that the machines wholly failed to do good or satisfactory work, or any work of value, though repeated trials were made thereof during the greater part of the harvest season of 1884; and that, in the endeavors of plaintiffs to make the machines operate satisfactorily, and to do and perform the work defendant contracted, guaranteed, and warranted they should do and perform, plaintiffs expended large sums of money, and lost a great amount of valuable time in attempting the harvesting, cutting, and saving of their grain, and also lost and had destroyed by said machines a large amount of grain, to the damage of plaintiffs in the sum of eight thousand dollars, or thereabouts. Plaintiffs further alleged that they returned the harvesters to defendant immediately after becoming fully satisfied that they were not capable of doing good or satisfactory work in the harvesting of grain, and demanded a return of the purchase-money, and interest, and the payment of the further sum of three thousand dollars damages sustained, which defendant refused to pay. The complaint prayed judgment for eleven thousand six hundred dollars damages alleged. The answer claimed that the defendant's representation was only to the effect that the machines would do good work in the harvest-fields when properly used; and denied that they were properly used by plaintiffs, or that plaintiffs used sufficient

endeavors to make them do good work, or that they were improperly constructed, or inadequate or unadapted to do good work, or that the machines were returned.  Defendant denied that the machines were ordered by plaintiffs on their joint account, or for their joint use, or were paid for out of joint funds, and alleged that each plaintiff contracted separately for one harvester, as shown by exhibits A and B, attached to the answer, one of which was signed by the plaintiff John Fox, named therein as party of the second part, and the other by the plaintiff J. C. Tilton, named therein as party of the second part. Each exhibit contained the following clause: "The party of the first part hereby agrees to manufacture, have ready for delivery, and deliver at the place of their manufactory in said county of San Joaquin, on the first day of June, 1884, to said party of the second part, one twelve-foot Shippee combined harvester, with Shippee and Grattan improvements, warranted to do good work, for the sum of eighteen hundred dollars, gold coin of the United States."  The jury found a verdict for plaintiffs in the sum of six thousand dollars.

The requests by defendant for instructions designated A and B, referred to in the opinion of the court as having been refused, were as follows:—

"A.  The defendant, in manufacturing these harvesters, warranted them to be free from any latent defect, and that no improper materials were used in the manufacture thereof, and that they were reasonably fit for harvesting grain; that is, that they would do good work in heading, thrashing, cleaning, and saving grain.  The warranty was not that they would do as good work as the same machine or some other machine thereafter invented or improved might do."

"B.  If the jury believe that the plaintiff Tilton testified that he had no interest in the grain harvested, or attempted to be harvested, by these harvesters in the year 1884, and that such testimony was true, then the

plaintiffs have no right to recover in this action for any loss of or to grain, if such loss occurred."

Said instruction B the court refused to give, on the ground that it had been given elsewhere, in instruction 3, given at request of defendant, as follows:—

"This is a joint action of the plaintiffs against the defendant; and if the jury believe, from the evidence, that the plaintiff Tilton had no interest in the grain harvested, or which was actually attempted to be cut and harvested, by the harvesters mentioned in the complaint in this action, in the summer of 1884, then the plaintiffs are not entitled to recover in this action any compensation for the loss of or to grain, if any, caused by harvesting, or attempting to cut and harvest, the same with these harvesters during that summer."

Instructions 1, 3, and 5, referred to in the opinion of the court as having been properly given, were as follows:—

"1. This is an action brought by John Fox and J. C. Tilton, the plaintiffs, for an alleged breach of warranty of two certain combined Shippee harvesters, sold and delivered by the defendant to them; and you are instructed that if you believe, from the evidence, that L. U. Shippee was the agent of the defendant for the sale of said machines, and that, in order to induce plaintiffs to purchase said machines and pay for the same, he represented and warranted that said machines would do good work in cutting, thrashing, and saving grain in the field; and if you further believe, from the evidence, that said machines, when properly handled, and used with due care and caution, would not do good work in cutting, thrashing, and saving grain in the field,—then you will find for the plaintiffs."

"3. If you find, from the evidence, that L. U. Shippee was the general agent of defendant to sell machines, and that said Shippee, in order to induce plaintiffs to purchase said two machines in the complaint mentioned,

represented to plaintiffs and warranted that said machines would cut, thrash, and clean from twenty to twenty-five acres of grain per day; and if you further find, from the evidence, that said machines, when properly handled and run, would not cut, thrash, and clean from twenty to twenty-five acres of grain per day,—then you will find a verdict for the plaintiffs."

"5. Every person or corporation who manufactures an article under an order for a particular purpose warrants by the sale of it that it is reasonably fit for that purpose. And if you find, from the evidence, that the defendant did manufacture the two machines in the complaint mentioned for the plaintiffs, Fox and Tilton, under an order from them, for the purpose of cutting, thrashing, and cleaning of their grain, by the sale of said machines defendant warranted that said machines were reasonably fit for the purpose of cutting, thrashing, and cleaning grain; and if you find, from the evidence, that said machines delivered to plaintiffs were not reasonably fit for the purpose of cutting, thrashing, and cleaning grain when properly handled,—then you will find a verdict for the plaintiffs. If the jury are satisfied, from the evidence, that in the month of February, 1884, the plaintiffs entered into a contract with the defendant, by which the defendant agreed to manufacture for the plaintiffs and deliver to them two twelve-foot Shippee combined harvesters, with Shippee and Grattan improvements, for the agreed price of eighteen hundred dollars each, and that at the time of said agreement said defendant, by and through its authorized agent or agents, warranted and guaranteed to said plaintiffs that said machines, when constructed and delivered, should be able to do good and satisfactory work in the harvest-field as harvesters, in the cutting, thrashing, and saving of grain, and that they should be able to do good and satisfactory work as such harvesters in sandy soil, such as was then owned by and being operated upon by the

plaintiffs, or either of them, and then and there warranted that said machines would cut in the harvest-fields from twenty to thirty acres of grain per day, and that said machine would save more grain than by the system in use in harvesting grain prior to 1884, and that at the time of said agreement said defendant agreed to and with these plaintiffs that if said machines did not do good and satisfactory work as such harvesters, then said defendant would repay to plaintiffs the price paid for said machines, and any loss or damage sustained by plaintiffs by reason of the purchase and use of said machines by said plaintiffs; and if you further find that in pursuance of said contract the defendant did manufacture said machines, and that, prior to the delivery to and the acceptance by said plaintiffs of said machines, said plaintiffs declined to accept said machines unless defendant would give them a further guaranty that said machines would do good and satisfactory work as such harvesters, and unless defendant would further guarantee that said machines would do good and satisfactory work as such harvesters in loose, sandy soil, and would give good satisfaction as such harvesters in cutting, thrashing, and saving of said grain growing upon loose, sandy soil, and unless said defendant would further guarantee that said machines would cut and thrash from twenty to thirty acres of grain growing upon loose, sandy soil per day, and unless said defendant would guarantee that said machines would save more grain than was saved under the system used prior to 1884; and if the jury further find that the plaintiffs then and there offered to pay to said defendant the two hundred dollars on each machine, the amount agreed to between plaintiffs and defendant to be paid by plaintiffs as a forfeiture in case they should decline to take said machines when completed; and if you further find, from the evidence, that the defendant, by its authorized agent, and to induce said plaintiffs to take and accept said machines, and to pay the price therefor, then

and there further guaranteed to plaintiffs that said machines, and each of them, would do good and satisfactory work as harvesters in the cutting, thrashing, and saving of grain growing upon loose and sandy soil, and then and there guaranteed that said machines, and each of them, would cut from twenty to thirty acres of grain growing upon loose, sandy soil per day, and then and there guaranteed that said machines, and each of them, were well adapted to do good and satisfactory work as harvesters in the cutting, thrashing, and saving of grain growing upon loose, sandy soil, and that said harvesters would save more grain than was saved under the system used prior to 1884, and that said harvesters would cut, thrash, and save grain at a greatly reduced price to what it had formerly cost; and if you further find that, relying upon said guaranties, plaintiffs accepted and received said machines, and paid the agreed price therefor to defendant; and if you further find, from the evidence, that after plaintiffs had received said machines they tried to work and operate them in the harvest-field, and that they used in the management, handling, and operating of them due and proper care, skill, and attention, under the direction, guidance, and management of the employees of defendant, and that they made repeated efforts and endeavors to make said machines do good and satisfactory work as such harvesters, but notwithstanding all such endeavors, and said skill and attention, both of these plaintiffs, their employees, and the employees of defendant, said machines, or either of them, did not do good and satisfactory work in the cutting, thrashing, and saving of grain; and if you further find that said machines did not substantially do the work said defendant guaranteed they and each of them would do, if you find said guaranties to have been made; and if you further find that as harvesters in cutting, thrashing, and saving of grain they were substantially a failure; and if you further find that after plaintiffs were satisfied of such failure plaintiffs

returned such machines to defendant,—then I charge you that your verdict should be for the plaintiffs; and the only question then remaining for you to determine would be the amount of damages plaintiffs would be entitled to recover. In determining this question, I charge you that plaintiffs are entitled to recover the price paid by them for said machines, and legal interest, which in this case is three thousand six hundred dollars, with interest; and in addition to said three thousand six hundred dollars and interest, they are also entitled to recover such amount of expense or loss as they have sustained in their *bona fide* attempts to make said machines do the work for which they were constructed; and in computing that amount you should allow the plaintiffs all expenses and damages sustained by them in the loss of time, horse-hire, use of animals, men's wages, board, keep, and all such expenses and damages which have been shown to have been sustained by them in such *bona fide* attempts to make said machines do the work said defendant guaranteed they should do, if you find such guaranty to have been made."

The instruction given as to the return of the machines, referred to in the opinion of the court as properly given, was as follows: "If, at the request of one of defendant's authorized agents, the plaintiffs did not return the machines until the spring of 1885, then defendant waived its right to require the prompt delivery of the machines to the defendant on the discovery by the plaintiffs of the fact, if it be a fact, that the machines did not do the work the defendant guaranteed they should do." The question respectively put to Fox and Tilton, referred to in the opinion of the court, related to the execution of the exhibits A and B, attached to the answer, which were signed by them separately, and inquired as to whether, in signing the contract, each acted for himself alone, or as agent for the two jointly. It was objected that the contract was the best evidence of the capacity in which each signed it. The objection

was overruled. Each exhibit attached to the answer was offered in evidence in connection with the cross-examination of each of these witnesses respectively; and when afterward offered by the defendant as part of his affirmative defense, were excluded upon the ground that the contracts were not signed by the defendant.

*W. L. Dudley, J. H. Budd,* and *Hatton & Fulkerth,* for Appellant.

*J. C. Campbell, Edward I. Jones,* and *W. E. Turner,* for Respondents.

Thornton, J.—Action to recover damages for breach of contract of sale by defendant of two harvesting machines. Verdict and judgment for plaintiffs. Appeal by defendant from the judgment, and order denying its motion for a new trial.

Several points have been discussed by counsel, which have to be determined.

We are of opinion that the court did not err in its ruling in excluding the papers, copies of which are annexed to defendant's answer, when offered the second time. They had been already offered and admitted. We cannot see that because they were read in evidence as a part of the cross-examination of other witnesses, therefore they were not in the case for all purposes for which they were admissible. The papers having been already put in evidence, the court did not err in refusing to allow them to be put in the second time. Nor does it make any difference that they were excluded when offered a second time for a reason not legally tenable. They were, as said above, already in for all purposes. Though the ground of their exclusion on the second offer may have been untenable, that was not equivalent, when they were already in, to a ruling that they were not evidence at all. We see no error in the ruling of the court which would justify a reversal.

There is no error in refusing defendant's request designated by the letter "A." The evidence tended to show a much broader and more particular warranty than that designated in the request, and the granting it would have tended to confuse and mislead the jury by diverting their attention from the other evidence in the case.

The refusal of the court to allow evidence that other machines made on the same pattern and of like materials did good work is not error. It involved an inquiry into the working of other machines on an outside issue. The other machines may have worked well, and still those in question may have failed to do so. The conditions may not have been the same in both cases. The machines may have been better constructed than those involved in this case.

We think the instructions 1, 3, and 5 were properly given. They were applicable to the evidence. Instruction 5 was in accordance with the testimony as to representations referred to in it, which were properly submitted to the jury, to determine whether or not they were intended by defendants as warranties.

We perceive no such variance between the averments in the complaint and the evidence as to render any of the instructions erroneous.

The averments in the complaint are sufficient to embrace such warranties.

There was no error in the instruction given as to the return of the machines in the spring of 1885. The averments of the complaint were sufficient to include it.

Instruction B, requested by defendant, was properly refused, for the reason that it had already been given at the request of defendant in instruction 3.

The court did not err in allowing the question respectively put to Fox and Tilton.

The evidence is sufficient to justify the verdict.

The record discloses no error, and the judgment and order are affirmed.

McFarland, J., and Sharpstein, J., concurred.

Hearing in Bank denied.