MILWAUKEE RICE MACHINERY COMPANY, Appellant, vs. HAMACEK, Respondent.

*September 25 — October 21, 1902.*

*Sale of chattels: Warranty: Reliance thereon: Evidence: Value: Special verdict: Issues.*

1. The question being whether the purchaser of a second-hand engine relied upon a warranty as to its condition, he was properly allowed to testify that he did not rely upon his own judgment but upon the vendor's representations.

2. In an action for a balance due on the purchase price of a second-hand engine, defendant alleged a breach of warranty as to the condition of the engine.  At the trial, some fifteen months after the sale, during which time the engine had been run almost continuously and had been taken apart and altered by defendant, he was allowed to testify as to its value at that time in the condition that it then was, but gave no evidence as to its value at the time of the sale.  *Held* that the admission of such testimony was prejudicial error.

3. An assertion by one having for sale a second-hand engine that it is "as good as new in every point and particular," is an assertion of a physical fact which he assumes to know, and on which a purchaser may properly rely, provided the defects be not such as to be obvious to him under the circumstances in which he purchases.

4. The question whether the purchaser of an engine relied upon a warranty contained in a letter theretofore written to him by the vendor was answered by the jury in the affirmative. Instructions given in submitting that question, which directed the jury to weigh the conflicting testimony as to the transaction between the purchaser and the vendor's agent when the bargain was concluded, and upon which the jury adopted the purchaser's version, are *held* to have broadened the question so that the answer should be understood as affirming also that the vendor knew and acquiesced in the sale and purchase in reliance upon said warranty.

APPEAL from a judgment of the circuit court for Door county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

Action for balance of $75.06 on the purchase price of a certain second-hand steam engine sold by plaintiff to defendant. Defense admitted the indebtedness and set up counterclaim for breach of warranty. It appeared that plaintiff was a dealer in machinery, and defendant the proprietor and manager of an electric light plant at Sturgeon Bay, and that he was an experienced engineer and machinist, skilled in the operation, construction, and repair of engines. In May, 1900, plaintiff mentioned to defendant the engine in question as for sale, and on May 8th he asked to be specifically informed about it, as he was about to make improvements in his plant. They replied, giving some description and inclosing catalogue, and said:

"We are willing to let this engine go at $600, which we can assure you is a great bargain, as the engine is as good as new in every point and particular."

Defendant asked further description as to measurements, estimated horse power, etc., and in the same letter (May 10th) said:

"I expect to be in your city in course of four or five weeks. Would like to look at the engine at the same time, which would save the special making of the trip there for that purpose expressly. The chances are that we might close a bar-

gain if the engine is in good working order and not worn too much."

Plaintiff replied, urging haste, as another party was considering the engine. On May 16th defendant wrote, asking where the engine was and whether he could see it run, closing with the statement: "At all events, would like to see it before buying, even if it is not in use now,"—and on the following day telegraphed that he would be in Milwaukee on May 19th to see the engine. On that day he went to the plaintiff's place of business and explained the object of his visit, when he was taken in charge by one Schult, a salesman in plaintiff's store, who, by the way, had on its behalf written the letters to the defendant above referred to. They went to the place where this engine had been used, at a summer resort in Milwaukee, and where it was then out of use. The transactions that then took place are vigorously disputed. Defendant claims that he expressed the desire to thoroughly examine the interior of the engine, to ascertain the extent to which its various parts were worn and the condition thereof; that when they reached the place there were no facilities for so doing, the engine being of a peculiar construction, so that the important parts could not be examined without the aid of derricks and tackle; that he then said that he would have to have the engine taken to pieces, so that he could make such inspection, otherwise he would not buy, unless its condition was fully guaranteed. Thereupon Mr. Schult said that they would stand by what had been said of the engine in writing, to the effect that it was "as good as new in every point and particular." The defendant testified that upon that assurance, relying on the statement which had been made to him in the plaintiff's letter, he purchased the engine for $588, of which he paid $300 down at that time at the plaintiff's store, accompanied at the moment of payment by a repetition of the declaration that he relied upon the guaranty that it was "as good as new in every point and particular."

The version of this transaction given by Mr. Schult is to the effect that defendant made all the examination he desired to, which was sufficiently complete to enable a machinist to know the condition of the engine, and bought without any reference being expressly made to any warranty of condition or quality. That question was submitted to the jury by special verdict, the first question of which was:

"Did the defendant, *Hamacek,* purchase the engine in question, relying upon the representations relative to the same contained in the plaintiff's letter of May 9, 1900, viz., that the engine was 'as good as new in every point and particular' ?"

To which the jury answered in the affirmative. Schult had no express authority to warrant, and there was no custom among the trade in Milwaukee to accompany sales of such articles by a warranty. The jury further answered that the engine was not "as good as new in every point and particular;" that its market value at the time it was sold was $495; that its value, if as warranted, at that time, in Milwaukee, would have been $800.

Plaintiff moved to set aside the answers to all of the questions of the special verdict, and grant a new trial, because none of them are supported by the preponderance of the evidence, and because the answers to the third and fourth questions as to values are without any support in the evidence; also, for errors occurring upon the trial. That motion was overruled, and judgment for the defendant entered for the sum of $223.75, being the difference between sound and actual value as found by the jury, less the amount due on plaintiff's cause of action, from which plaintiff appeals.

*Wm. Kaumheimer,* for the appellant, to the point that the letter of May 9th did not contain a warranty, cited Bennett's Benj. Sales (6th ed.) 622–623; Tiedeman, Sales, § 193; *M'Farland v. Newman,* 9 Watts, 55; *Gentilli v. Starace,* 133 N. Y. 140–143; *Diebold S. & L. Co. v. Huston,*

55 Kan. 104; *Dolan v. John Douglas Co.* 4 Colo. App. 280, 35 Pac. 670; *Linn v. Gunn,* 56 Mich. 447, 23 N. W. 84–86; *McDonald Mfg. Co v. Thomas,* 53 Iowa, 558, 5 N. W. 737; *Austin v. Nickerson,* 21 Wis. 542; *Giffert v. West,* 33 Wis. 617; *Neave v. Arntz,* 56 Wis. 174; ,*White v. Stelloh,* 74 Wis. 435; *Hoffman v. Dixon,* 105 Wis. 315.

*Y. V. Dreutzer,* for the respondent.

DODGE, J.   1. Several assignments of error are predicated upon admission of evidence over plaintiff's objection.  First among these is the inquiry: "Did you buy that engine, relying upon your own judgment as to its condition?" which was answered in the negative.  Another exception is predicated upon an analogous question: "In making this purchase, did you rely upon the representations made in the letter of May 9th, and was that part of the transaction,—was that part of the bargain?"  No error was committed in overruling these objections.  The questions at issue were whether plaintiff made a warranty, and, secondly, whether defendant bought in reliance thereon.  The latter was vigorously controverted. The defendant and the plaintiff's salesman, Schult, gave contradictory narratives of the transaction between them at which the purchase was made; the salesman asserting that the defendant made full examination of the engine, and the defendant, on the other hand, asserting that he was unable to do so, and desisted on the faith of the warranty that the engine was "as good as new in every point and particular," and so notified plaintiff's agent.  The question whether or not he purchased in reliance upon that representation, or whether he substituted therefor his own examination of the engine and judgment based thereon, was one of fact, as to which he might properly testify, albeit the testimony relating to mental processes would have been easily overcome by conduct and circumstances.

Another exception was reserved upon the overruling of an

objection to the question, "What is that engine worth now, in its present condition? Answer, $350." The trial was had some fifteen months after the sale. During that period the engine had been run almost continuously, and, indeed, according to some evidence, violently. It had been in defendant's possession, and had been by him taken apart, altered, and modified, and various parts changed, according to his idea of its requirements. The question before the jury was the value of that engine in its actual condition at the time of the sale, not at a time so remote and so disconnected by changes and use as to be certainly, or even probably, variant from that at time of sale. The evidence was, therefore, as urged by the objection, incompetent, irrelevant, and immaterial, and it was error to admit it. Nor can we assert that it was nonprejudicial. The defendant placed a very low valuation upon it at that time, lower than the jury in fact found for it at the time of its sale, and thereby gave the only direct evidence of the value of the engine, defective as it was claimed to be. It was certainly within reasonable possibilities that the fixing of a value of $350 at this time might well have influenced the jury toward placing a low value on the engine at the time of its purchase. To what extent it is, of course, impossible to say. For this error, therefore, there must be a reversal of this judgment.

Exception is reserved to the admission of other evidence bearing upon the inference of an implied agency to warrant in the salesman Schult. We do not stop to inquire whether any technical error was here committed; for the court took the question of Schult's authority to warrant away from the jury, and decided it as matter of law favorably to the appellant.

2. Error is assigned upon the refusal of the court to direct a verdict for the plaintiff. Under this heading it is first contended that the words used in the letter of May 9th, "The engine is as good as new in every point and particular," are

mere words of general commendation, and are not capable of being construed into a warranty of any material fact. This position is wholly untenable. It appears clearly from the evidence that a second-hand engine may, for all practical purposes, be as good as a new one,—indeed, by reason of the smoothing of the surfaces playing against each other, it may be more effective for practical work,—but that from running an engine the various parts and bearings become worn and thus loosened, permitting escape of steam, and impairing the safety and the efficiency of the engine, such wear frequently extending to the point where the parts affected must be removed or treated, so as to bring their surfaces into exact contact again; that these conditions are matters which can be ascertained by inspection of the various parts, at least by one skilled in the manufacture and repair of engines. In view of these facts, we can entertain no doubt that an assertion, by one having in his possession for sale an engine, that it is "as good as new in every point and particular," is an assertion of a physical fact which he assumes to know, and on which a purchaser may properly rely, provided the defects be not such as to be obvious to him under the circumstances in which he purchases.

Under this heading, also, it is argued that an agent has no implied authority to warrant the quality or condition of what he sells, unless there be a custom from which to derive the implication. This is immaterial to the case as it was tried. The court substantially ruled that the agent or salesman, Schult, had no authority, and submitted to the jury no question of any warranty made by him.

3. At the close of the trial a motion was made to set aside the answers to the several questions of the special verdict and enter judgment for the plaintiff, and also to grant a new trial. Under this head it is urged that the answers to the third and fourth questions, finding the sound value and defective value of the engine, are unsupported by any evidence. We confess

that the evidence is very scanty in support of either the $800 as sound value or the $495 as actual value, and some members of the court incline to the view that such answers are so without support that they should have been set aside. As the situation in this respect now presented is very likely to be changed upon another trial, we shall not deem it necessary to decide, or do more than express grave doubt.

The first question of the verdict is made the text for reargument of the proposition that the selling agent, Schult, had no authority to warrant the engine, and therefore he could not bind the plaintiff by any reaffirmation of what was declared in the letter of May 9th. Here, again, the appellant seems not to appreciate the attitude taken by the trial court. It was not suggested that the defendant's recovery depended in any way upon any assertion or reaffirmation made by the agent. The court properly held the letter of May 9th to contain warranty, and, as there was no dispute as to the authenticity of that letter, he held that the making of the warranty appeared as matter of law. He then submitted the next question in logical sequence, namely, whether defendant relied on that warranty. In submitting this question he instructed the jury that they were to weigh the evidence as to the transaction which took place between defendant and plaintiff's agent, tending, some of it, to prove the purchase to have been made in expressed reliance on that warranty, and some, to the substitution of defendant's own judgment, based on examination of the engine and entire nonreference to any warranty. Upon such instructions, which, by the way, were not excepted to, the jury adopted the defendant's own version. Those instructions served to broaden the question somewhat, and in their light the jury's answer must be understood as affirming plaintiff's knowledge and acquiescence in the sale and purchase in reliance on the warranty confessedly made by it. We think, therefore, the verdict disposed of all

the issues. By reason of the error in admission of evidence, however, it must be ordered:

*By the Court.*—Judgment reversed, and cause remanded for new trial.

