[Civ. No. 816.   Third Appellate District.—May 9, 1911.]

## LUITWEILER PUMPING ENGINE COMPANY, a Corporation, Appellant, v. UKIAH WATER AND IMPROVEMENT COMPANY, a Corporation, Respondent.

SALE OF PUMP — ACTION FOR UNPAID PURCHASE MONEY — DEFENSE— BREACH OF WARRANTY — RESCISSION — COUNTERCLAIM FOR MONEY PAID.—In an action to recover unpaid purchase money for a pump sold, where the defense was the breach of an express warranty as to the working of the pump, and that it was fit for the purpose for which it was required by the vendee, whereas, in fact, the representations concerning its fitness were false, that defendant relied upon the same, and a rescission was sought upon a tender back of the pump, and for a return of money paid on account, it is held that the defendant is entitled to the relief sought, and that the findings and evidence warrant such relief.

ID.—STATUTORY BREACH OF WARRANTY—RESCISSION.—It is held that, under the view of the evidence taken by the trial court, there was a breach of warranty, express or implied, as defined in sections 1763, 1766, and 1776 of the Civil Code, and the breach thereof was intended to operate as a condition entitling the buyer to rescind the agreement for sale of the pump, under section 1786 of the Civil Code.

ID.—AFFIRMATION OF QUALITY OR CHARACTER OF THING SOLD — WARRANTY.—Any distinct assertion or affirmation as to the quality or character of the thing sold, made by the seller during the negotiations for the sale, which it may be reasonably supposed was intended to induce the purchase, and was relied on by the purchaser, will be regarded as a warranty, unless accompanied by an express statement that it is not intended as such.

Id.—Liberal Construction of Warranties in Favor of Buyer.—Language used by the seller in making affirmations respecting the quality of the thing sold is to be construed liberally in favor of the buyer, and treated as warranties, when such inference is at all reasonable; and where the buyer actually did rely upon the material representations of fact made by the seller, they operated to create a warranty in the buyer's favor.

Id.—Absence of Formal Contract—Oral and Written Negotiations. Although, as a general rule, all oral negotiations are merged in a final written contract, yet where there was no formal written contract entered into between the parties, and the warranty was embodied in an underscored catalogue of plaintiff, delivered to defendant, and in plaintiff's letters to defendant, and the correspondence between them and the oral negotiations were in harmony with the written evidence, it is proper to consider the record of the conversations and writings between the parties as evidencing the contract of warranty, and to be considered in connection with the statutory warranties, express and implied.

Id.—Delay in Rescission Excused—Warranty not Waived.—The delay in the rescission of the contract was excused under the circumstances in proof, where it was at the request of the seller or his agent for the purpose of giving them an opportunity to remedy defects, and the warranty was not waived by such delay.

Id.—Consequential Damages not Allowed—Allowance Consistent as to Damages on Rescission.—Though the court disallowed consequential damages for breach of the warranty, yet it consistently allowed, upon rescission and return of the pump, the amount paid on the purchase money before knowledge of the breach of warranty, together with freight charges paid for shipment of the pump.

Id.—Expert Evidence—Nature of Pump Required.—It is held that expert evidence was admissible from the superintendent of the waterworks to which the unfit pump had been delivered and returned to show that it was necessary in his water system to have a pump that will not produce any water hammer or concussion in the pipes, and to show what would be the effect of this concussion, it appearing that the pump sold was warranted not to produce such water hammer or concussion, and that the breach of warranty consisted in the fact that it did produce the same.

Id.—Finding as to Understanding for Return of Money Paid—Support Unnecessary—Remedy by Rescission.—It is held that a finding as to an understanding for the return of the money paid was immaterial, and need not be supported, where the remedy by rescission was adopted, and the law upon the adoption of such remedy requires the return of the money as well as the pump to the seller.

Id.—Evidence as to Reliance of Superintendent of Waterworks on Representations in Plaintiff's Catalogue.—Evidence of the superintendent of the waterworks was admissible to show that he relied upon the representations as to the working of the pump stated in plaintiff's catalogue, and not upon his own judgment.

Id.—Opinion Denying Rehearing in Bank—Limitation upon Opinion of District Court of Appeal—Evidence of Oral Negotiations.—It is held by the supreme court in bank, in denying a rehearing after decision in the district court of appeal, that, if the opinion of the district court of appeal can be construed as holding that a new term can be added to a written contract containing in itself all the essentials of a complete agreement by resort to the antecedent oral negotiations of the parties, regarded as surrounding circumstances, such doctrine is not approved and is not essential to sustain the judgment of affirmance.

APPEAL from an order of the Superior Court of Mendocino County denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

J. E. Pemberton, and Thomas & Thomas, for Appellant.

Robert E. Duncan, for Respondent.

BURNETT, J.—The action was brought to recover $600 as a balance due on the purchase price of a pump. The defense is a breach of warranty. It is claimed that the pump was totally unfit for the purpose for which it was procured, and that the representations made concerning it by plaintiff and upon which defendant relied were false. An offer to return the pump was also pleaded and a demand was made for the return of $1,000 which had been paid by defendant on account.

Plaintiff appeals from the order denying its motion for a new trial.

There is evidence to justify the following statement of facts, which we make substantially in the language of respondent, some of which, indeed, are not disputed: The appellant was engaged in the manufacture and sale of pumps and pumping machinery, having its principal place of business in Los Angeles. S. W. Luitweiler was the president of the company. The respondent was the owner of a water system which supplies the city of Ukiah and its inhabitants

with water and J. H. Brush of Santa Rosa was the president and his son, Irving H. Brush, was the secretary and general manager of the company. One C. H. Dwinell was the agent of appellant for the purpose of selling or soliciting orders for its pumps and pumping machinery. Early in the year 1907 Mr. Dwinell called upon Mr. J. H. Brush at Santa Rosa and recommended the purchase of a pump from appellant. Certain correspondence was then had between Mr. Brush and the pumping company, and thereupon Mr. Luitweiler, the president thereof, paid a personal visit to Mr. Brush at Santa Rosa, and the latter explained in detail the character and situation of the plant and the workings and operation of the water system in Ukiah. Among other facts, it was stated that the water was pumped directly through the mains of the city from which the inhabitants and the city were supplied, and he exhibited to him a map and plan of the whole system. Mr. Brush also impressed upon Mr. Luitweiler the difficulties of pumping under the conditions there and told him that the Simmons Saw Company had put in one of their pumps and that it had utterly failed to do the work. He stated to Mr. Luitweiler that it was necessary to have a pump that would be steady in its operation, that would throw a stream without pulsation and that would have no jar or vibration or water hammer in the pipes. Mr. Luitweiler had one of his catalogues with him which he exhibited to Mr. Brush and he pointed out certain statements therein and he underscored the same with ink and he assured Mr. Brush that he could supply him with a pump that would meet all the requirements and he left the catalogue with him. Later there was considerable correspondence in regard to the matter, Mr. Brush and his son requesting information as to the capacity of their pumps and also furnishing information concerning the needs of the situation at Ukiah. This correspondence was begun in February, 1907. On April 19, 1907, respondent gave an order for a certain sized pump, and it was agreed that respondent should have the privilege of testing the same for a period of ten days after it was placed in operation. The pump was not shipped until May 29, 1907. When it arrived it was discovered that it could not be placed in the old well of the water company, so that a new well was dug within a few feet of the old where the conditions were similar.

On account of the necessary delay the pump was not put into operation until about the middle of October, 1907. In the meantime quite a number of letters passed between the parties, the pumping company insisting upon payment, and the water company replying that it had not yet had time to test the pump, and also insisting upon a written guaranty. On the day that the pump was first operated Mr. Brush sent to the pumping company a check for $1,000, stating in his letter that he had seen the pump run for about two hours just before dark, but could not tell what it would do when limbered up, that there were some changes to be made and they were to send him the directions for the same but had not done so. Mr. Brush, in his testimony, declares that he sent the check because he supposed the pump, when certain changes were made, would do the work and he felt safe in sending the money.

In one of the letters written by the pump company, on August 28, 1907, occurs this passage: "Mr. Dwinell writes us that you have not put the pumping engine into use, but that you are putting down a new well and having bad luck with it, and also that you have not paid us because you have no guaranty. We want to call your attention to the fact that we are bound by the statements in our catalogue and as to our guaranty you have on page 39 all facts stated in the catalogue and no other guaranty is required." Among the qualities which Mr. Luitweiler claimed the pump possessed and which were underscored in the catalogue in his conversation with Mr. Brush and referred to in his letter are the following: "It is the only pump that has a constant load. It delivers water without pulsation. Luitweiler pumps are balanced. They have no water hammer in pipes. They have no jar or vibration." When in operation it was found that the pump would not do the work required and that it did not possess the qualities that were claimed for it. In support of this, certain facts appear in the reported testimony of witnesses for defendant, and it is furthermore recited in the transcript that "The defendant produced the engineers who had charge of the operation of said Luitweiler pump, and Mr. I. H. Brush, the secretary of defendant corporation, who testified that the Luitweiler pump delivered a pulsating stream when pumping water out on the ground directly from the pump without

being connected with the water mains, and that there was great jar and vibration in the pipes during the operation of said pump. The engineers further testified that in their opinion the Luitweiler pump was entirely unfit for use in the Ukiah water system, and that the faulty working of the pump and delivery of water thereby was caused by the imperfect construction of the pump.'' The pumping company was notified of the various defects in the pump, and there was much correspondence between the two companies, the pumping company suggesting various methods to overcome the defects. The suggestions were adopted but without success, and the water company finally demanded of appellant that it send some one of its engineers to see if he could make it work. This was declined unless the water company would send $75 to defray his expenses, the same to be at the cost of the water company if the defect was the fault of installation, and to be at the cost of the pumping company if the defect was in the pump. Mr. Brush did not answer this letter. The water company used the pump for about three months. Very shortly after putting it in operation, however, Mr. Brush verbally offered to return the pump and requested the money to be paid back. Later on, after the commencement of this suit, and at the suggestion of his counsel, the same offer was made again in writing. The delay and continued use of the pump were due to the hope that the difficulties might be overcome and the pump so adjusted that it would do the work.

None of the officers of the water company had ever seen one of these Luitweiler pumps and never had an opportunity to see one. They knew nothing about its construction and were compelled to rely, and did rely, upon the assurance and representations made by the pumping company and its officers that the pump would do the work demanded by the system at Ukiah, and that it had the qualities represented in the catalogue and underscored by Mr. Luitweiler. We must conclude also from the record that respondent's officers were acting in perfect good faith, that they made no misrepresentations, practiced no deceit and made a genuine effort to operate the pump successfully.

In accordance with the foregoing facts and inferences, which are fully warranted by the evidence, the court found:

"That said defendant fully informed said plaintiff in regard to said water system, and what would be required of said pump, and the said plaintiff warranted the said defendant that said pump was reasonably fit for said purpose; that the said plaintiff further represented and warranted said defendant that said pump in operation carried a constant load in the delivery of water, and would deliver water without pulsation, and that said pump had and would have no vibration or jar . . . ; that said defendant relied upon all of said representations made by said plaintiff; that said plaintiff agreed to deliver said pump to said defendant for the sum of $1,600, and further agreed that the said defendant should have the right and privilege to test said pump before paying for the same in order to determine whether or not the said representations and warranties made by said plaintiff were true, and whether or not said pump was reasonably fit for the purpose required by said defendant; that said defendant tested the same during the month of October, 1907; that each and all of the representations and warranties hereinbefore set forth and made by said plaintiff to said defendant were false; that said pump did not and would not carry a constant load and would not deliver water without pulsation, said pump had or caused water hammer in pipes and there was extraordinary jar and vibration when said pump was in operation, that said pump was entirely unfit for the purpose for which it was ordered, and for which it was used and to be used." Then follow the findings that defendant notified plaintiff of the foregoing facts, and that it held said pump for plaintiff, and that prior to the testing of the pump and before it had knowledge of its defects respondent paid $1,000 on account and that said defendant had demanded the return of said sum, but that no part of it had been paid.

Is there any consideration of good morals or any provision of the statute or decision of the supreme court that would preclude the trial judge from reaching a conclusion from the foregoing facts that respondent was entitled to the relief claimed in its answer and counterclaim? There is certainly nothing unconscionable in the inference from the established facts that defendant should be restored to its former condition. As far as it can be avoided, the innocent should not, of course,

suffer .for the wrongdoing of another in whom confidence has
been misplaced.

Under the view of the evidence taken by the trial court,
we find also a breach of warranty, both express and implied,
as contemplated by sections 1763–1766 and 1770 of the Civil
Code.    The court was justified in concluding that there were
latent defects in the pump, that it was not ''reasonably fit
for the purpose'' for which it was bought, and especially
that there was a violation of the express warranty by which
the seller assured to the buyer certain facts and qualities of
commanding importance to the latter.    There was also rea-
sonable ground for the inference that it was intended by the
parties that these warranties should be regarded as a condi-
tion precedent to the sale and, therefore, rescission was proper.
(Civ. Code, sec. 1786.)

Turning to some of the cases, we find, in *Polhemus* v.
*Heiman,* 45 Cal. 573, that the action was brought to recover
the balance of the purchase price for a large quantity of wool.
It was held that there was an express warranty that the wool
should not be in an unmerchantable condition by reason of
dirt and burs and that the account returned by the defendant,
after the wool was received, would not necessarily defeat the
claim for damages, the court saying that: ''If made with a
knowledge of the alleged defects it would be evidence only
tending to show that the wool when accepted met the require-
ments of the contract, and that the present claim is an after-
thought to avoid payment.    If, however, the account was
made in ignorance of the true condition of the wool, the de-
fendants would not thereby be prevented from obtaining any
relief which they would otherwise have been entitled to.''

In *Hoult* v. *Baldwin,* 67 Cal. 610, [8 Pac. 440], the action
was to recover the purchase price of a harvesting machine.
When the machine arrived at the railway station nearest to
defendant's ranch it was carefully taken from the car and
the detached parts were put together.    An attempt was then
made to haul it away, but before it had gone more than forty
or fifty feet from the depot, upon a dry, hard and level road,
a part of the machinery broke so that the harvester could be
moved no further.    A telegram was immediately sent to the
plaintiffs, notifying them of the break, and they at once
forwarded a duplicate casting to take the place of the broken

one. The new casting was put in place and another effort was made to haul the machinery to the ranch, but before it had gone many feet the new casting also broke. The defendant then declined to accept the machine and offered to return it to the plaintiffs. The supreme court declared that "Having taken the machine under a warranty, whether it be that expressed in the writing or provided by the code, or both, the defendant had the right, if there was a breach of the warranty, that is, if in any respect the machine was not what it was warranted to be, to rescind the sale by returning or offering to return it to the plaintiff."

In *Fox* v. *Harvester etc. Works*, 83 Cal. 333, [23 Pac. 295], it was held that it was proper to submit to the jury whether certain representations made in reference to the working of a harvesting machine were intended as warranties, the complaint being broad enough to include such warranties.

The rule, indeed, seems to be well settled that "any distinct assertion or affirmation as to the quality or character of the thing to be sold, made by the seller during the negotiations for the sale, which it may reasonably be supposed was intended to induce the purchase and was relied on by the purchaser, will be regarded as a warranty unless accompanied by an express statement that it is not intended as such." (30 Am. & Eng. Ency. of Law, p. 136.) And it seems that the general tendency of the later authorities is to construe liberally in favor of the buyer language used by the seller in making affirmations respecting the quality of his goods and to treat such affirmations as warranties when such an inference is at all reasonable. Id., p. 138.)

There is a very great difference between the positive affirmation of the qualities already referred to and the mere expression of an opinion upon a matter about which the buyer is supposed to exercise his own judgment. Applying the test generally recognized by the authorities, it must be held here that the representations made by the seller were of facts upon which it may be fairly presumed the seller expected the buyer to rely and upon which a buyer would ordinarily rely, and, indeed, the evidence shows that the buyer actually did rely upon the representations. Undoubtedly, therefore, they operated to create a warranty.

The specific objections of appellant to the action of the trial court, to which some further consideration may be devoted, are as follows: 1. All previous oral conversation and negotiations are deemed merged in the written contract, and therefore the conversation between the presidents of the two companies was improperly admitted in evidence. 2. If the testimony of oral statements had been admissible, they proved no warranty. 3. No attempt at rescission of contract was made until after suit was begun—which was certainly entirely too late. 4. A purchaser relying on a warranty and a right to rescind thereunder must act promptly on discovery of the breach. 5. One cannot rescind for an immaterial breach of a warranty, i. e., one not causing any damage. The court expressly found that defendant suffered no damage whatever. 6. Incompetent expert evidence was admitted. 7. There is no evidence to support the finding that "said payment of $1,000.00 was made with the understanding that the same was to be repaid to said defendant in case said representations and warranties were untrue, or said pump was unfit for the purpose for which it was intended." 8. J. H. Brush was improperly allowed to testify that he relied upon the representations in plaintiff's catalogue.

No doubt the rule of law as to oral negotiations is properly stated by appellant. (Civ. Code, sec. 1625.) We think, however, it has no application here. There was no formal contract entered into between the parties. After the negotiations and correspondence to which we have already referred the pump was finally ordered by letter. It is as plain as anything can be that you must look through the record of conversations and correspondence to find all the terms of the contract. The language of the court, in *Kreuzberger* v. *Wingfield*, 96 Cal. 251, [31 Pac. 109], is therefore in point, wherein it is said: "The rule is, of course, a familiar and salutary one, that when a contract has been reduced to writing, parol evidence is not admissible for the purpose of cutting down or adding to its terms, but in order for the rule to have any application, the writing must be one which, by legal construction, shows upon its face it was intended to express the whole contract between the parties." The case here in this regard is also quite similar to *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324, [66 Pac. 311], wherein it is held that

it was proper for the trial court to allow testimony as "to previous negotiations," they being a part of the surrounding circumstances necessary to explain the contract. (Civ. Code, sec. 1647.)

Whether the writing contains the entire agreement is a question to be determined not merely from the face of the instrument, but from all the facts and circumstances connected with it, and is usually for the jury. (*Ehrsam* v. *Brown,* 64 Kan. 466, [67 Pac. 867].)

While parol evidence is not admissible to contradict or vary the written agreement, the court may look, not only to the language of the correspondence evidencing that transaction, but also to the subject matter of the agreement and the surrounding circumstances, in order to be placed, as nearly as practicable, in the position in which the contracting parties were when they entered into the agreement. (*Bagley etc. Co.* v. *Saranac River Pulp etc. Co.,* 135 N. Y. 626, [32 N. E. 132].) Of course we do not mean to hold that a new term can be added by parol to a written contract complete in itself.

What we have already stated covers the point as to the sufficiency of the oral testimony to establish the warranty. It may be added that, of course, the written and the oral testimony and the provisions of the statute must be considered together.

The delay in the rescission of the contract has also been adverted to and was excusable for the reasons mentioned. "If the return of the machine warranted to do good work and found upon trial to be unfit for use is delayed at the request of the manufacturer, he thereby waives the right to require prompt delivery by the purchaser on discovery of the fact that it does not do the work guaranteed." (*Fox* v. *Stockton etc. Works,* 83 Cal. 333, [23 Pac. 295].) The buyer's retention and use of the article beyond the stipulated time will not operate as a waiver of the benefits of the warranty when it was at the instance of the seller or his agent or when it was for the purpose of giving the seller or his agent an opportunity to remedy defects. (30 Am. & Eng. Ency. of Law, p. 188.)

Damage must, of course, be caused by the breach of the warranty to justify a recovery by the vendee. The contention of appellant as to this point is based upon the finding

of the lower court. "That it is not true that said defendant has sustained damages in the sum of $400 in the erection and operation of said pump or otherwise, or in any other sum. And the court finds and decides that said defendant is not entitled to any damages by reason thereof." But this obviously refers to what is characterized as "consequential damages." The familiar rule is that the damages recoverable for the breach of warranty of machinery purchased for a known purpose are not confined to the difference between the machinery as warranted and as it proves to be, but include such consequential damages as are the direct, immediate and probable result of the breach.. (*New York etc. Min. Syndicate etc.* v. *Fraser*, 130 U. S. 611, [9 Sup. Ct. Rep. 665, 32 L. Ed. 1031].) Here the court found, as already indicated, that the damage was the amount paid on the purchase price, together with the freight charges for the shipment of the pump to Ukiah. The findings are consistent as to the damages, but the court found against defendant as to its claim for injury caused by the operation of the pump.

The court was justified in overruling the objection to the following question propounded to Irving Brush, the superintendent of the waterworks: "In your system is it necessary to have a pump that will not produce any water hammer in the pipes?" He was familiar with the system, he had been directing its operation for more than two years and he was competent to answer the question. A careful observer for that period of time of the workings of the water plant would be in a position to state what the effect would be of this concussion in the pipes and the answer and explanation of the witness show that he was capable of enlightening the jury as to this somewhat technical consideration.

There was no direct evidence to sustain the finding as to the understanding about the repayment of the $1,000, but the finding is not necessary to support the judgment as, from the other facts found, the law requires the return of the money. Indeed, the buyer has the choice of two remedies. He may return the article and sue for damages or rescind the contract and recover the amount of the purchase price paid. He may not pursue two inconsistent remedies. If he chooses to exercise the special remedy by returning the ar-

16 Cal. App.—14

ticle to the seller, he is then confined to a recovery of the purchase money paid. (*Abraham* v. *Browder,* 114 Ala. 287, [21 South. 818].)

It was proper to allow Mr. Brush to state that he relied upon the representations in plaintiff's catalogue. The question involved a very important circumstance, and the buyer may be asked whether in buying he relied upon his own judgment or upon the seller's representations. (*Milwaukee Rice Machinery Co.* v. *Hamacek,* 115 Wis. 422, [91 N. W. 1010].) The court, of course, would not be bound by his answer, but it should be considered with the other facts and circumstances in the case.

We perceive no prejudicial error, and the order denying plaintiff's motion for a new trial is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 8, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 8, 1911, and the following opinion then rendered thereon:

THE COURT.—In denying a rehearing of this cause we wish to say that if the opinion of the district court of appeal can be construed as holding that a new term can be added to a written contract containing in itself all the essentials of a complete agreement, by resort to the antecedent oral negotiations of the parties, regarded as surrounding circumstances, we do not approve that doctrine, and do not regard it as essential to sustain the judgment of affirmance.