[Civ. No. 3810.   Third Appellate District.—June 19, 1929.]

HARRY R. WHITE, Plaintiff, v. NATIONAL BANK OF COMMERCE, a Corporation, Defendant, Cross-Complainant and Respondent; CALIFORNIA SPRAY CHEMICAL COMPANY, a Corporation, Cross-Defendant and Appellant.

Bradley & Bradley and Wyckoff & Gardner for Appellant.

H. B. McClure for Respondent.

FINCH, P. J.—The plaintiff brought this action to recover $1586 alleged to be due for a quantity of tree spray, called Volck Concentrate, purchased by the defendant. The answer denies that the spray was purchased from the plaintiff, but alleges that it was purchased from the California Spray Chemical Company. The defendant filed a cross-complaint against that company and the plaintiff, alleging that the defendant, as trustee of the estate of Richard Thew, deceased, operates and controls a large orchard of citrus fruits; that by means of deceit and false representations the cross-defendants induced the defendant to purchase the spray in question; that the spray was applied to the trees according to the company's directions and that the effect thereof was to damage the fruit growing on the trees and the foliage thereof in the sum of $2,300. The court found the allegations of the cross-complaint to be true, but also found that the spray destroyed the scale infesting the trees. Judgment was entered in favor of the defendant against the company for $714, the difference between the amount of the alleged damage and the purchase price of the spray. The company has appealed from the judgment.

Appellant concedes that "under the 'conflict of evidence' rule it must be taken on this appeal that the sale was made by the company directly to the bank through the

agency of White (the plaintiff) and (Howard) Houston."
Under the same rule, it must be held that there is ample
evidence to support all of the findings except the finding
that the alleged false representations "were known to be
untrue by plaintiff and said California Spray Chemical Com-
pany and said agents and representatives at the time the
same were made." While the evidence in support of that
finding is not so satisfactory as that supporting the other
findings, it is deemed sufficient, as will later appear.

The court found that prior to the sale to the defendant
the company, through advertisements of which the defendant
had knowledge, represented that said spray "would not
burn, scald, or in any way harm citrus fruit trees, their
fruits or foliage, regardless of the temperature or weather
conditions"; that White and Houston, for the purpose of
inducing defendant to purchase the spray, "in their capacity
as agents and representatives" of the company, stated and
represented "that said spray would kill the scale and other
insects, their eggs and larvae which might be upon said citrus
trees and their fruits and foliage thereon, without injuring
or damaging said trees, their fruit or foliage, . . . regardless
of the temperature or other weather conditions"; that the
company and its said agents made all of such representations
"in a manner not warranted by the information they had of
the effect that said Volck Concentrate would have upon citrus
trees, their fruits and foliage"; that by reason of the appli-
cation of the spray, "said trees were burned and injured and
a great many of the oranges then growing upon said trees
were burned, injured, destroyed and dropped from said
trees, . . . as well as a large part of the foliage of said
trees." The court made other appropriate findings which are
not material to any question raised by the appeal.

Respondent contends that the finding that the representa-
tions were known to be untrue is unnecessary because of the
further finding that they were made in a manner not war-
ranted by the information of the cross-defendants, citing sec-
tion 1572, subdivision 2, of the Civil Code, which defines such
an unwarranted assertion as actual fraud. Appellant, how-
ever, contends that section 1572 relates only to the consent
essential to the validity of a contract and that section 1709
and section 1710, subdivision 2, of the Civil Code, are appli-
cable to cases such as this, citing Hoffman v. Kirby, 136 Cal.

26 [68 Pac. 321], *Toner* v. *Meussdorffer,* 123 Cal. 462 [56 Pac. 39], and *Miller* v. *Fireman's Fund Ins. Co.,* 6 Cal. App. 395 [92 Pac. 332]. It is unnecessary to decide which of these contentions is correct, because, as stated, there is sufficient evidence to warrant the inference that the representatives of the company knew that the representations were untrue.

The representations made by White and Houston were made about June 17, 1925, and those made through advertisements were published prior to that time during the same year. Volck Concentrate was first placed on the market in December, 1924. Prior to that time the company manufactured and sold a spray now called Volck Standard. Volck Concentrate is composed of 83% white oil and "17% of water and other inert matter." It contains an emulsifier which is "considerably less than one per cent" of the admixture. Volck Standard contains 25% of white oil, 50% of kerosene and 25% of water and emulsifier. The quantity of emulsifier in the Standard ranges from 1½% to 3%. The white oil "is a highly refined mineral oil, refined up to the purity of medicinal oil." "It is similar in character in purity to Nujol." R. S. Woglum, an expert of wide experience in the use of insecticides, entomologist of the California Fruit Growers Exchange, testified:

"The oil does not mix readily with water. Therefore, it has been customary in insecticide work to mix something with the oil that would make it unite with the water, what they call an emulsifier. . . . Where you have a very small amount of an emulsion (emulsifier), it binds the oil so—the oil globules with the water—so they will loosen as soon as the spray material hits the tree. Most of the oil remains on the tree, and the spray material that runs off . . . is largely water. But by increasing the amount of emulsifier, it so rightens the emulsion that when it is sprayed on the tree, why less of the oil remains and more goes off on the ground." The witness stated that the result of spraying with Volck Concentrate was to leave more oil on the tree than in the use of Volck Standard and that, while for that reason the former was a more effective insecticide than the latter, it was also, for the same reason, more injurious to the fruit and foliage of the tree, and, in the opinion of the witness, it was this excess of oil which caused the injury to the

fruit and foliage in the defendant's orchard. While Woglum's first experience with the use of Volck Concentrate was in February or March, 1925, the results of his observations of its effects were such that he sent out a circular, dated May 25, 1925, calling attention to some of the injuries caused by its use, which were of the same character as those in defendant's orchard.

W. H. Volck, the company's director of research, testified: "We endeavor in the Concentrate to make what is known as a quick breaking emulsion, and if you make the emulsifier very large, perhaps you would interfere with that, you wouldn't have it so quick breaking. . . . Q. How long had you been experimenting with and perfecting this Concentrate before you used it commercially? A. About two years."

■ "Defendant's knowledge of the falsity of his statement may be established by inference from other facts in evidence, provided that the facts proved are such that the inference may legitimately be drawn from them, and are not equally consistent with defendant's innocence. As a general rule, however, scienter cannot be inferred from the mere fact that the statement was false, although it may be so inferred where the subject matter of the representation was so peculiarly within defendant's personal knowledge that he must have known his statement to be untrue." (27 C. J. 70.)

■ The fact that Woglum so readily discovered the injurious effects of spraying citrus trees with Volck Concentrate warrants the inference that the company's experts must have made the same discovery during their two years of "experimenting with and perfecting" the spray. ■ The results of such experimenting were peculiarly within their knowledge and the trial court was not bound to accept their testimony to the effect that they had observed no injurious effects from the application of the spray.

■ The company's manager testified that it "was the course of business and the practice of the company" to put labels, containing instructions as to the use of the spray, on all packages thereof, and that such labels were put "on all drums that went out." A sample of the label to which the witness referred was introduced in evidence. It contained the following: "This material is guaranteed as to analysis and to quality, but due to conditions beyond our

control, such as weather, soil moisture, etc., we will not be responsible for any damage or ill effect resulting from its use.'' The manager of defendant's orchard, however, testified: ''I have never seen any labels on any drums.'' Attention has not been called to any testimony to the effect that any such label actually appeared on any of the drums of spray which were delivered to the defendant, and the evidence is not such as to require an inference to that effect.

Appellant contends that the ''representations were matters of opinion and prophecy and not actionable.'' It clearly appears that the representations were as to the qualities of the spray and not mere opinions. (*J. B. Colt Co.* v. *Freitas,* 76 Cal. App. 278, 285 [244 Pac. 916]; *Kolberg* v. *Sherwin-Williams Co.,* 93 Cal. App. 609 [269 Pac. 975].)

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 19, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1929.

All the Justices present concurred.