[Civ. No. 812.   Fifth Dist.   Mar. 21, 1968.]

SUREN P. MOSESIAN, Plaintiff and Appellant, v. GEORGE BAGDASARIAN et al., Defendants and Respondents.

Paul S. Mosesian for Plaintiff and Appellant.

Mikio Uchiyama, Pillsbury, Madison & Sutro, Noble K. Gregory, Anthony P. Brown and Walter R. Allan for Defendants and Respondents.

STONE, J.—Plaintiff appeals from an adverse judgment in his action for breach of warranty against an agricultural chemical dealer and an agricultural chemical distributor.

In 1958 plaintiff, who had grown grapes for many years, planted grape cuttings for nursery stock. He used a liquid, identified in the agrochemical business as DD, to fumigate his land for protection against nematodes, and the result was satisfactory. DD is a liquid which when injected into properly cultivated soil to a depth of about 9 inches vaporizes and fumigates the soil. To prevent escape of the gas, the top soil is smoothed over and packed or pressed down. The chemical used in 1958 was purchased from and applied by a firm that had no connection with the transaction before us.

The following year, when plaintiff was ready to plant cuttings, he called defendant George Bagdasarian, a dealer in agricultural chemicals, and told him that he intended to plant grape cuttings on a 20-acre parcel of land and a 5-acre parcel, and before planting he wanted both parcels treated for nematodes. Bagdasarian said he knew very little about nematode control but he would call his distributor, defendant California Spray Chemical Corporation (Cal Spray) and have them send someone to consult with plaintiff. After calling Cal Spray, Bagdasarian advised plantiff by telephone that someone from Cal Spray would meet plaintiff at the property. Accordingly Fenton George, who died before trial but whose deposition was received in evidence, met with plaintiff and his foreman, a Mr. Hagopian, and the three men looked over both parcels that were to be treated.

After discussing the work, the kind of material and the amount to be applied per acre with plaintiff and Hagopian, Mr. George ordered the material from Cal Spray, specifying the total number of gallons to be delivered. Pursuant to George's instructions, the drums were delivered by Cal Spray to plaintiff's property. Mr. George used his own equipment to apply it, and advised Cal Spray of his charge. Bagdasarian was billed by Cal Spray for the cost of the material less his dealer's discount, and for George's charge for applying the material. Bagdasarian, in turn, billed plaintiff for both the material and Mr. George's application charge, which plaintiff paid in a lump sum.

Although the same gallonage per acre was used on both parcels, the result on the 5-acre parcel was satisfactory while the nematode infestation of the cuttings on the 20-acre parcel prevented the sale of any of them. It is not clear whether the

result on the 20-acre as contrasted with the 5-acre parcel resulted because of different types of soil or because of a more severe nematode infestation in the 20 acres at the time of fumigating. The experts opined that the trouble lay in the sandy composition of the soil of the 20 acres, a condition that is particularly favorable to nematode infestation, and the fact that light soils of this character require a heavier dosage of liquid fumigant than heavier soils.

Plaintiff filed this action against Bagdasarian, the dealer and sole proprietor of Baggie Supply Co., Cal Spray, the distributor, and Shell Chemical Corporation, the manufacturer of the product, pleading causes of action for breach of an express written warranty, a breach of an express oral warranty, for negligence, and for fraud and deceit. Fenton George, also a defendant, died during pendency of the action and a dismissal was entered as to him. The court granted a nonsuit as to Shell Chemical Corporation, and plaintiff dismissed his negligence cause of action and those based on fraud and deceit. By stipulation, the jury was dismissed and the trial proceeded before the judge, against defendants George Bagdasarian and California Spray Chemical Corporation.

During the argument concerning Shell Chemical's motion for nonsuit, the trial court raised the question whether there was an implied warranty. Defense counsel pointed out that no implied warranty was pleaded, nor was such an issue specified in the pretrial conference order. Plaintiff then moved to amend his complaint to state a cause of action for implied warranty, under Civil Code section 1735. After hearing argument on the matter, the court denied the motion, which plaintiff contends constituted an abuse of discretion. We doubt there was an abuse of discretion since the complaint had been filed four years and the pretrial order filed three years before trial, and the motion was made well along in the course of trial. In any event, plaintiff cannot complain of the ruling as he adduced no evidence of an implied warranty of fitness. It was established that the material used was not only proper for fumigation of nematodes but that it probably was the most effective material then known. So far as the record discloses, the failure resulted from the application of an insufficiently heavy dosage, that is, not enough gallons per acre were applied to kill the heavy infestation of nematodes on the 20-acre parcel.

Thus, unlike the case of *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041], where the farmer ordered a cotton defoliant and the dealer delivered a weed killer, the

quality of the material sold to plaintiff is unquestioned. The same distinction holds for the cited cases, *Kolberg* v. *Sherwin-Williams Co.*, 93 Cal.App. 609 [269 P. 975]; and *White* v. *National Bank of Commerce*, 99 Cal.App. 519 [278 P. 915]. In each case spray material was delivered to the farmer for purposes of pest control with an assurance that it would not injure citrus trees, while, in truth, the spray material was highly toxic to citrus foliage and caused a great amount of damage.

Section 1735 of the Civil Code, upon which plaintiff relies, is limited to a warranty "as to the quality or fitness for any particular purpose of goods supplied. . . ." Since DD was well suited to the purpose of eradicating nematodes, there was no breach of an implied warranty.

Plaintiff next asserts that he proved a breach of two express warranties. ▮ He first contends there was a written express warranty by label. The drums delivered to plaintiff's property bore labels upon which various recommended gallonages per acre were printed. Plaintiff asserts the recommended dosage was applied, but that it did not do the job. The court found against plaintiff on this point for two reasons: first, there was no evidence that plaintiff read or relied upon or even saw the labels; second, plaintiff could not have justifiably relied upon the labels because a disclaimer was printed on each one.

The pretrial conference order made the question of disclaimer an issue, and on that issue the trial court made the following findings:

"XVI. That there existed an express disclaimer of warranty of Product by CALIFORNIA SPRAY CHEMICAL CORPORATION contained on labels affixed to the containers of Product delivered to plaintiff and the subject matter in this case.

"XVII. That the express disclaimer contained within the said labels affixed to the containers of product was legally sufficient to give plaintiff notice that, other than a warranty of chemical components, CALIFORNIA SPRAY CHEMICAL CORPORATION did not warrant or guarantee the quality, use, control or results to be expected from Product.

"XVIII. That plaintiff knew, and as a reasonable man should have known, that the products of CALIFORNIA SPRAY CHEMICAL CORPORATION and Product were sold with express disclaimer and without express representations, warranties or guarantees as to their quality, use, control or results to be expected therefrom."

In *Burr* v. *Sherwin Williams Co., supra,* 42 Cal.2d at page 693, the Supreme Court explicates the relation of disclaimers by labels to warranties: ''The statutory implied warranties of quality can, of course, be disclaimed by the seller, provided the buyer has knowledge or is chargeable with notice of the disclaimer before the bargain is complete. [Citations.] Notice of disclaimer can be conveyed to the buyer by means of printed notices on letterheads, labels and the like. [Citations.] Although plaintiffs themselves did not see the drums prior to the time their cotton crop was sprayed, they are chargeable with notice of the contents of the labels because the persons to whom the insecticide was delivered were obviously their agents for purposes of the spraying operation.''

█ Plaintiff contends there was an oral express warranty by Fenton George that the gallonage applied would free the land of nematodes, and that in making the warranty George was acting as the ostensible agent of both the dealer, Bagdasarian, and the distributor, Cal Spray. The court determined that George was neither an ostensible agent nor an employee of defendant Bagdasarian, but found that he was an ostensible employee of defendant California Spray Chemical Corporation.

The facts are that plaintiff called Bagdasarian and asked him to fumigate the land. Bagdasarian told him he knew nothing about fumigating for nematodes but that he would call Cal Spray. A short time later Bagdasarian, after calling Cal Spray, advised plaintiff by telephone that someone from Cal Spray would be out to view the land and discuss the proposed fumigating with him. This was the last plaintiff heard of the matter until George arrived at his ranch and told him that Cal Spray had sent him out. George and plaintiff discussed the preparation of the soil, the material to be used, the amount to be applied per acre, and the time of application, as well as the manner of application. In the light of the background circumstances leading up to George's appearance at plaintiff's property, plaintiff had no reason to believe that George was the agent or employee of Bagdasarian but he had every right to believe that George was either an agent or employee of Cal Spray authorized to discuss the material to be used as well as the manner of applying it. Even though George was an independent contractor, as Cal Spray contends, he was invested with the indicia of an ostensible agent authorized to consummate all details necessary to fumigate plaintiff's property. After George discussed the manner of applying the fumigant and the number of gallons of liquid recom-

mended to do the job, he directed Cal Spray to send the amount of material he determined was necessary to accomplish the desired result.

These facts fit within the framework of ostensible agency as defined in *Lee* v. *Helmco, Inc.*, 199 Cal.App.2d 820, at page 834 [19 Cal.Rptr. 413] : "An ostensible agency exists when 'the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him.' [Citation.] Ostensible agency is predicated upon the theory of estoppel. [Citations.] Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the third party to believe that the agency exists."

Certainly a reasonable person would have no cause to doubt that Mr. George had authority from Cal Spray to consult with plaintiff and to advise him in the application of DD.

Yet our conclusion that George was the ostensible agent of Cal Spray, with ostensible authority to make representations as to the amount of material necessary to properly fumigate the soil for nematodes, is not determinative of the issue of warranty since the trial court found that Mr. George's representations as to gallonage were statements of personal opinion, and not affirmations of fact or promises as to quality or use of the product or the control or result to be expected from its use. The evidence is conflicting as to just what Mr. George said about the number of gallons per acre to be applied. Plaintiff and his foreman, Hagopian, both testified that he recommended 30 gallons per acre, that plaintiff asked what the maximum recommended was, to which Mr. George replied, "40 gallons will kill everything in the ground." Plaintiff then said, "We don't want to have no nematodes, Mr. George. You put 40 gallons on."

It would have been one thing had the trial court given full credit to this testimony, but apparently Mr. George's version of the conversation was accepted by the court. According to Mr. George, he told plaintiff that he estimated between 25 and 30 gallons of DD should be applied per acre, and said nothing about increasing the amount to 40 gallons per acre. Whether he did represent that 40 gallons per acre would kill the nematodes or simply estimated that between 25 and 30 gallons should be applied, is the fact determination upon which the distinction between opinion and warranty turns. Mr. George testified:

"Q. Now, prior to the actual application did you have any conversation with Mr. Mosesian relative to increasing the amount? A. No."

■ The conflicting testimony concerning the discussion between plaintiff and George relating to the gallonage of DD to be applied raised a fact question; that is, whether George made firm representations sufficient to furnish the basis for an express warranty or merely expressed his personal opinion, was for the trial court to resolve. (*McLennan* v. *Ohmen*, 75 Cal. 558, 561 [17 P. 687]; *Shattuck* v. *St. Francis Hotel & Apts.*, 7 Cal.2d 358, 361 [60 P.2d 855]; *Ventura Manufacturing etc. Co.* v. *Warfield*, 37 Cal.App. 147, 162 [174 P. 382]; *Shelley* v. *Hart*, 112 Cal.App. 231, 241 [297 P. 82].) As to this issue of fact, the court found:

"XIV. That any statements made to plaintiff by FENTON GEORGE were know by plaintiff, or as a reasonable man should have been known by plaintiff, to be the personal opinions of FENTON GEORGE only and not affirmations of fact or promises as to the quality, use, control or results to be expected from Product."

■ It is axiomatic that a reviewing court will not reweigh the evidence nor pass upon the credibility of witnesses. (*Kyle* v. *Stone*, 234 Cal.App.2d 286, 291 [44 Cal.Rptr. 390]; *Hicks* v. *Reis*, 21 Cal.2d 654, 659 [134 P.2d 788]; *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Bruce* v. *Ullery*, 58 Cal.2d 702, 710-711 [25 Cal.Rptr. 841, 375 P.2d 833].) ■ The trier of fact is entitled to accept or reject all or any part of the testimony of any witness (*People* v. *Matlock*, 51 Cal.2d 682, 695 [336 P.2d 505, 11 A.L.R.2d 605]; *Nevarov* v. *Caldwell*, 161 Cal.App.2d 762, 777 [327 P.2d 111]; *La Jolla Casa deManana* v. *Hopkins*, 98 Cal.App.2d 339, 345-346 [219 P.2d 871]) or to believe and accept a portion of the testimony of a particular witness and disbelieve the remainder of his testimony (*People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836]).

■ As a reviewing court it is our duty to view the evidence in the light most favorable to the respondents, and to indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied April 17, 1968.